United States District Court
Southern District of Texas
**ENTERED**
October 04, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| TRAVIS LEE HODGES, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:22-cv-00003 |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § § § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Travis Lee Hodges ("Hodges") seeks judicial review of an administrative decision denying his application for supplemental security income under Title XVI of the Social Security Act (the "Act").

## BACKGROUND

Hodges filed an application for supplemental security income on November 21, 2017, alleging disability beginning October 1, 2015. His application was denied and denied again upon reconsideration. On October 22, 2019 an ALJ held a hearing. On November 27, 2019, the ALJ issued a decision, finding that Hodges had not been under a disability. On June 24, 2020, the Appeals Council remanded the case to the ALJ with instructions to further develop the record and consider certain medical records that were not exhibited at the October 22, 2019 hearing. On February 24, 2021, the ALJ held another hearing. On March 22, 2021, the ALJ issued a decision, again finding that Hodges had not been under a disability. Hodges requested the Appeals Council review the ALJ's decision. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit

their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a sequential, five-step approach to determine if a claimant is disabled:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See Salmond*, 892 F.3d at 817. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity

("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

At Step 1, the ALJ found that Hodges "has not engaged in substantial gainful activity since November 21, 2017, the application filing date." Dkt. 8-3 at 13.

At Step 2, the ALJ found that Hodges suffered from "the following severe impairments: degenerative disc disease of the cervical spine and lumbar spine with status post cervical fusion, depressive disorder, anxiety disorder and history of polysubstance abuse." *Id.*

At Step 3, the ALJ found that Hodges "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id.*

Prior to consideration of Step 4, the ALJ determined:

> [Hodges] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except [he] can perform jobs that are unskilled and involve routine job tasks and instructions; can maintain attention, concentration, persistence and pace for simple and repetitive tasks for two hours at a time over the workday; can perform jobs having only occasional decision-making and changes in work setting; cannot climb ladders, ropes and scaffolds; can do occasional stooping, crouching, kneeling, crawling and climbing ramps and stairs; and can have occasional interaction with the public, coworkers and supervisors.

*Id.* at 15–16.

At Step 4, the ALJ found that Hodges "has no past relevant work." *Id.* at 20.

At Step 5, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Hodges] can perform." *Id.* Accordingly, the ALJ found that Hodges has not been under a disability. *See id.* at 21.

## DISCUSSION

Hodges is representing himself in this appeal. Hodges has been afforded several opportunities to file his brief requesting relief. *See* Dkts. 13, 16. He has not done so. The only arguments that Hodges has ever made to this court are contained in his initial filing:

> After careful review of the appeal decision I disagree with the following findings: [(1)] page 4 of the appeal decision states the severity of my mental impairments, medical records component X10-3F need to be re-reviewed[; (2)] Pages 5 & 6 of the appeal decision states that I have the [residual functional] capacity to [perform light work, but] . . . an extensive study of these medical records will prove I do not possess this capacity. Based on medical records component X10 no. 4f (located on the list of exhibits)[; (3)] Also on page no. 7 – the decision states, through July 2016 I have [received] treatment for chronic neck issues and that I exhibited full strength and normal reflexes and normal gait (2F2-3, 5-6, 10-11, 4-15, 18-19) which is not true. Based on component X10-2F Dr. Kyle Ignace will agree with me that these findings are incorrect and that I do not exhibit full strength, normal reflexes, or normal gait. The Doctors notes must not have been thoroughly read.

Dkt. 1 at 5. I will address each of these arguments in turn.

But first, I must stress the limitations of my review. Even if Hodges can point to evidence in the record that supports a finding of disability, "[s]ome contrary evidence in the record does not equate to a finding of no substantial evidence." *Samuels v. Kijakazi*, No. 3:22-cv-00198, 2023 WL 2774460, at *5 (S.D. Tex. Apr. 4, 2023). The Fifth Circuit has repeatedly held that "'no substantial evidence' will be found *only* where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (emphasis added) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). The phrase "no contrary medical evidence" means that "[n]o medical evidence contradicts [the claimant's disability]." *Payne v. Weinberger*, 480 F.2d 1006, 1008 (5th Cir. 1973). In plain language: at this point in the proceedings, I can reverse the Commissioner's decision only if all the evidence points to disability, or if the Commissioner made a nonsensical choice.

### A.  MENTAL IMPAIRMENT

Exhibit No. 3F contains treatment records from Aurora Psychiatric Hospital. The ALJ thoroughly reviewed these records, noting:

> With regard to his mental impairments, [Hodges] was hospitalized for four days in February 2016 for depressed mood, anxiety, suicidal thoughts and alcohol, cocaine and marijuana use after a break up with his girlfriend (3F/1). Following treatment with group therapy and medications, he exhibited "good" mood and fair insight, judgment, fair concentration and attention span (3F/3-4). . . .
>
> In June 2016, [Hodges] was hospitalized for two days after presenting with suicidal ideations (3F/42, 46, 49). [Hodges] reported using heroin, cocaine and alcohol on a daily basis (3F/46). He was diagnosed with depression and polysubstance dependence as well as organic affective disorder secondary to alcohol and cocaine (3F/44) but was discharged against medical advice when he was not prescribed Suboxone (3F/42-43). No other medications were prescribed (3F/44).
>
> In July 2016, [Hodges] was voluntarily hospitalized for four days after he reported depressed mood, poor sleep, low energy and suicidal thoughts. Diagnoses included depression and antisocial personality disorder as well as alcohol withdrawal syndrome, alcohol use disorder, cocaine use disorder and opioid use disorder (3F/72, 80, 93, 141). Unfortunately, [Hodges] was poorly engaged with treatment, relapsed while in the program and then was a "no show" for three days, resulting in his discharge to community services (3F/155).

Dkt. 8-3 at 18. The ALJ found it significant that Hodges "was discharged against medical advice" and "poorly engaged with treatment." *Id*. This is substantial evidence that supports the ALJ's conclusion that Hodges' "statements concerning the intensity, persistence and limited effects of [his mental] symptoms are not consistent with the medical evidence." *Id*. at 16.

### B.  RFC TO PERFORM LIGHT WORK

Exhibit No. 4F is 13 pages of treatment records from Rogers Memorial Hospital, where Hodges was admitted in November 2016 for opiate and alcohol detox. Hodges seems to believe that these records show that he cannot perform light work. The ALJ reviewed these records, noting:

5

> In November 2016, [Hodges] was voluntarily hospitalized for three days for depression and opiate detox (4F/1). Diagnosed with depressive disorder, opiate use disorder, cocaine dependence, alcohol use disorder and cannabis abuse, he was started on a low-dose Suboxone taper, followed by treatment with Cymbalta and Gabapentin (4F/1-2). His withdrawal symptoms slowly and gradually subsided and resolved, and he was discharged in stable condition (4F/1).

*Id.* at 18. Nothing about these records or the ALJ's summary suggests an absence of credible choices. *See Johnson*, 864 F.2d at 343–44.

## C.   FULL STRENGTH, NORMAL REFLEXES, AND NORMAL GAIT

Finally, Hodges insists that his pain management doctor, Dr. Kyle Ignace, "will agree with [him] that . . . [he does] not exhibit full strength, normal reflexes, or normal gait." Dkt. 1 at 5. Yet, as noted by the ALJ, the records from Dr. Ignace suggest otherwise:

> Through July 2016, [Hodges] received treat[ment] for chronic neck pain, which was effectively controlled with medication (2F/1, 3, 5, 7, 9, 13, 15, 17, 19). Upon examination, he typically exhibited full strength, normal sensory function, normal reflexes and normal gait (2F/2-3, 5-6, 10-11, 14-15, 18-19). He was assessed with cervical spine herniation of the nucleus pulposus (2F/3, 15, 19).

Dkt. 8-3 at 17. Specifically, on January 11, 2016, Hodges "denie[d] stiffness, weakness, swelling, or pain" and displayed 5/5 strength with normal senses and normal gait. Dkt. 8-10 at 26–27. On April 8, 2016, Hodges stated that he "ha[d] been doing good" since his last visit with "limited pain and more functional[ity]." *Id.* at 29. Hodges "[d]enie[d] shoulder or arm weakness" and stated that he was "[a]ble to do [activities of daily living] and [was] fairly active." *Id.* Although Hodges complained of "chronic neck discomfort," his condition was listed as "stable." *Id.* at 30. His strength was again rated at 5/5 with normal senses and normal gait. *Id.* at 30–31. On June 10, 2016, Hodges requested more pain meds, but was again noted to have a "stable and unchanged" musculoskeletal condition, and was again rated 5/5 for strength with normal senses and normal gait. *Id.* at 38–39. These notations were repeated during Hodges' July 11, 2016 visit. *See id.* at 42–43.

6

Nothing about these records or the ALJ's summary suggests an absence of credible choices. *See Johnson*, 864 F.2d at 343–44.

\* \* \*

Having considered Hodges' arguments, and having reviewed the ALJ's decision and the records that Hodges said should be "re-reviewed," Dkt. 1 at 5, I find that the ALJ's decision is supported by substantial evidence.

## CONCLUSION

For the reasons stated above, I recommend the Commissioner's decision be affirmed and this matter dismissed.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 4th day of October 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE